J. CHRISTOPHER JORGENSEN, ESQ.
State Bar No. 5382
MENG ZHONG, ESQ.
State Bar No. 12145
LEWIS AND ROCA LLP
3993 Howard Hughes Pkwy., Ste. 600
Las Vegas, NV  89169
(702) 949-8200
(702) 949-8398/fax

*Attorneys for Defendants Countrywide Financial*
*Corporation, Countrywide Home Loans, Inc., Bank*
*of America Corporation, Bank of America, N.A., as*
*successor by merger to BAC Home Loans*
*Servicing, LP, America's Wholesale Lender, Inc.*
*and ReconTrust Company, N.A.*

## UNITED STATE DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| TAMARA ANGLADA, RICHARD ELEY, BRETT HILL, ABEL GUZMAN,<br><br>                              Plaintiffs,<br><br>         vs.<br><br>BANK OF AMERICA CORPORATION; BAC HOME LOANS SERVICING, L.P.; COUNTRYWIDE FINANCIAL; COUNTRYWIDE HOME LOANS INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; CUSTOM HOME LOANS INC.; AMERICA'S WHOLESALE LENDER, INC.; HOME MORTGAGE DIRECT LENDERS, INC.; RECONTRUST COMPANY, N.A.; FIRST AMERICAN TITLE; FIRST AMERICAN FINANCIAL CORPORATION; et al.,<br><br>                              Defendants. | Case:  3:11-cv-00524-RCJ-RAM<br><br><br>**CERTAIN DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** |

        Defendants, Countrywide Financial Corporation ("CFC"), Countrywide Home Loans, Inc.

("CHL"); Bank of America Corporation ("BAC"); Bank of America, N.A., as successor by merger

to BAC Home Loans Servicing LP ("BANA"); America's Wholesale Lender, Inc. ("AWL"); and

ReconTrust Company, N.A ("ReconTrust"), (collectively, "Countrywide Defendants"), file this

Motion to Dismiss Plaintiffs' Second Amended Complaint (Dkt. # 1).  This Motion is based on the

pleadings and papers on file herein, including the contemporaneously filed Request for Judicial Notice ("RJN"), and the following memorandum of points and authorities.

MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

This Court need read no more than the first few pages of the Second Amended Complaint ("SAC") to find this to be one of the "thousands of identical cookie-cutter complaints containing lengthy diatribes against the mortgage industry" that seek to prevent a proper foreclosure and otherwise drain the resources of courts. *Tatro v. Homecomings Fin. Network, Inc.*, 2011 WL 240255, at *3 (D. Nev. Jan. 20, 2011) (J., Jones).[1]

This Court is quite familiar with the discredited claims that Plaintiffs have brought and should dismiss them accordingly.  Furthermore, as will be discussed below, the foreclosure sequence in this case do not warrant an injunction on foreclosure proceedings.  The Second Amended Complaint fails to state a claim upon which relief can be granted and should be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II.      FACTUAL BACKGROUND

Plaintiffs are four different borrowers with five different loans secured by five different properties.

### A.  Anglada's Loan

In 2005, Plaintiff Anglada took out a loan from Custom Home Loans, Inc. to purchase Property located at 1640 Cumulus Court, Sparks, Nevada 89436.  (Anglada Deed of Trust, Exhibit A to RJN; *see also* Anglada Loan Application, Exhibit E to RJN.)  Plaintiff defaulted on her loan in February 2009.  (Anglada Notice of Default, Exhibit B to RJN.)  On September 3, 2009, MERS assigned beneficial interest to Bank of New York Mellon as Trustee for MBS Series 2005-64CB. (Anglada Assignment, Exhibit C to RJN.)  Bank of New York Mellon substituted ReconTrust in

---

[1]      Plaintiffs have also committed a serious procedural error by joining four different borrowers with five different loans secured by five different properties together into one lawsuit.  This is not a class action and there is no central nucleus of facts tying Plaintiffs together.  Defendants reserve all rights to seek to severe Plaintiffs pursuant to Federal Rule of Civil Procedure 21 (misjoinder).

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

556135.1

as Trustee. (Anglada Substitution of Trustee, Exhibit D to RJN.) On September 3, 2009, ReconTrust recorded the Notice of Default. (Anglada Notice of Default, Exhibit B to RJN.)

### B.  Hill's Loan

In 2005, Plaintiff Hill took out a loan from Home Mortgage Direct Lenders to purchase Property located at 3810 Belvedere Drive, Reno, Nevada 89503. (Hill Deed of Trust, Exhibit F to RJN; *see also* Hill Loan Application, Exhibit G to RJN.) Plaintiff defaulted on the loan in August 2010. (Hill Notice of Default, Exhibit H to RJN.) On January 31, 2011, ReconTrust, as agent for the beneficiary MERS, recorded the Notice of Default. (Hill Notice of Default, Exhibit H to RJN.) On February 7, 2011, MERS assigned beneficial interest to BAC Home Loans Servicing, LP. (Hill Assignment, Exhibit I to RJN.) On February 7, 2011, BAC substituted ReconTrust in as Trustee. (Hill Substitution of Trustee, Exhibit J to RJN.)

### C.  Guzman's Loan

In 2005, Plaintiff Guzman took out a loan from Soma Financial to purchase Property located at 2160 Lenticular Drive, Sparks, Nevada 89436. (Guzman Deed of Trust, Exhibit K to RJN; *see also* Guzman Loan Application, Exhibit L to RJN.) Plaintiff defaulted on the loan in January 2011. (Guzman Notice of Default, Exhibit M to RJN.) On April 21, 2011, MERS assigned beneficial interest to BAC Home Loans Servicing, LP. (Guzman Assignment, Exhibit N to RJN.) On April 21 2011, BAC substituted ReconTrust in as Trustee. (Hill Substitution of Trustee, Exhibit O to RJN.) On April 22, 2011, ReconTrust recorded the Notice of Default. (Guzman Notice of Default, Exhibit M to RJN.)

### D.  Eley's Loans

Plaintiff Eley has two loans, each secured by a different property, that are the subjects of this litigation. One Property is in Reno. The other is in Idaho.

#### 1. Eley's Reno Property

In 2005, Plaintiff Eley took out a refinance loan from Countrywide Home Loans, Inc. secured by Property located at 8711 White Fir Street, Reno Nevada 89523. (Eley Deed of Trust, Exhibit P to RJN.) Plaintiff defaulted on the loan in February 2010. (Eley Notice of Default, Exhibit Q to RJN.) On December 22, 2010, ReconTrust recorded the Notice of Default. (*Id.*)

### 2. Eley's IdahoProperty

In 2006, Plaintiff Eley took out a loan from America's Wholesale Lender to purchase Property located at 11643 Tahiti Boise, Idaho.  (Eley's Idaho Deed of Trust, Exhibit R to RJN; *see also* Eley Idaho Loan Application, Exhibit S to RJN.)

### III. LEGAL ARGUMENT

#### A. Legal Standard

A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  To survive a motion to dismiss, a complaint must be pled showing plaintiff's entitlement to relief.  This "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009).  Factual allegations must be enough to raise a claim above the speculative level. *Twombly*, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE §1216, at 235-36 (3d ed. 2004)).  When faced with a motion to dismiss, the court must accept the well-pleaded factual allegations of the complaint as true, and reasonable inferences must be drawn in plaintiff's favor. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007).

However, only "fair" inferences arising from the pleading must be accepted by the court. Bald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations, and will not suffice to defeat a motion to dismiss. *G.K. Las Vegas Ltd. P'ship v. Simon Prop. Group, Inc.*, 460 F. Supp. 2d 1246, 1261 (D. Nev. 2006); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  The court is not required to accept as true allegations that are merely conclusory, "unwarranted deductions of fact, or unreasonable inferences." *Sprewell*, 266 F.3d at 988.  Courts will not assume the truth of legal conclusions merely because they are cast in the form of factual allegations, and will not assume that a plaintiff "can prove facts which [she has] not alleged, or that the defendants have violated . . . laws in ways

1    that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of*

2    *Carpenters*, 459 U.S. 519, 526, 103 S. Ct. 897 (1983); *Warren v. Fox Family Worldwide, Inc.*, 328

3    F.3d 1136, 1139 (9th Cir. 2003); *accord Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th

4    Cir. 1981).

6    **B.**     **Forum Non Conveniens For Eley's Idaho Property Foreclosure**

7        Plaintiff Eley claims Countrywide Defendants committed all manner of predatory lending

8    and wrongful foreclosure actions with respect to her.  However, Plaintiff Eley has two properties,

9    one in Reno Nevada and one in Boise Idaho.  Each property is secured by a different loan, with a

10    different deed of trust, and Plaintiff obtained each at different times with different lenders.  In

11    essence, Eley alleges two distinct claims – one involving her loan secured by the Idaho property

12    and one secured by her loan in Nevada.  Defendants respectfully ask the Court to dismiss Eley's

13    claims as it relates to the Idaho Property under the doctrine of Forum Non Conveniens.

15        "The doctrine of *forum non conveniens* permits a court to decline to exercise its

16    jurisdiction…[w]hen a court decides in its discretion that a case before it should more

17    appropriately be tried in a foreign forum…" *Cheng v. Boeing Co.*, 708 F.2d 1406, 1409 (9th Cir.

18    1983).  The considerations for whether to exercise such discretion includes access to proof,

19    availability of witnesses, power of the court to compel attendance of witnesses, cost of attendance

20    for witnesses, possibility of view of premises, and "all other practical problems that make trial of a

21    case easy." *Id.*  Furthermore, the Court may also consider the administrative difficulties, the local

22    interest, interest in having the case adjudicated in a forum that is "familiar with the law",

23    avoidance of problems with conflicts of law and the fairness with burdening citizens to attend jury

24    duty in an unrelated forum. *Id.* at 1410.

26        Here, there is no logical reason why a Nevada Federal Court should have to adjudicate a

27    dispute involving contracts (Note and Deed of Trust) formed, executed and fully performed in

28    Idaho.  There is no reason why a Nevada Federal Court should have to adjudicate and apply Idaho

   foreclosure law to determine whether an Idaho foreclosure was proper or not.  All the witnesses,

other than Plaintiff Eley, to the loan and the foreclosure are in Idaho.  There is no local interest here either.  Nevada has no interest in Idaho property.  Nevada citizens should not be called to jury duty to adjudicate property rights located in Idaho.  There is no prejudice to Plaintiff either because were the Court to dismiss, she can simply re-file her action in Idaho.  This Court should dismiss all claims as it relates to Plaintiff Eley's Idaho Property.  *Cheng*, 708 F.2d at 1409 ("When a court decides in its discretion that a case before it should more appropriately be tried in a foreign forum, it may dismiss the case").

### C.   Plaintiffs' Unfair Lending Act Claim Fails  (Count 1)

Plaintiffs claim their lenders committed unfair lending when issuing their loans.  (SAC ¶¶ 38-41.)  This claim should be dismissed for several reasons.

First, Plaintiffs Anglada, Hill and Guzman's claim should be dismissed outright as to the Countrywide Defendants.  Countrywide Defendants did not originate these loans.  (*See* Deeds of Trusts, Exhibits A (Anglada), F (Hill), and K (Guzman).)  Plaintiff's conclusory allegation that somehow Countrywide is the lender even though the Deeds specifically state otherwise is not sufficient to plead a plausible claim.  *Twombly*, 550 U.S. at 555 (Rule 8 "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do").

Second, four of the five Plaintiffs' claims should be dismissed because Section 598D do not apply to their loans.  Before October 1, 2007, N.R.S. § 598D did not apply to purchase-money loans.  *See Goodwin*, 680 F. Supp. 2d at 1252 (dismissing claim because mortgage loan did not apply under the pre-2007 statute).  The most recent loan that is alleged in the SAC is January 2007.  (SAC ¶¶ 39-41.)   Therefore, only the pre-2007 version of N.R.S. § 598D applies to this case.  However, Plaintiffs Anglada, Hill, and Guzman's loans are all purchase money loans.  (*See* Loan Applications, Exhibits E (Anglada), G (Hill), and L (Guzman).)

Third, Eley's loan number 2 is not only a purchase money loan (Exhibit S), but it is also a loan taken out in Idaho and secured by Idaho Property.  Plaintiff Eley cannot apply a Nevada law to an Idaho loan.  *Magnolia Petroleum Co. v. Hunt*, 320 U.S. 430, 440 (1943) (states are "without power to give extraterritorial effect to its laws").  This Claim should be dismissed as to Anglada, Hill, Guzman and Eley's Idaho loan.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

556135.1

Fourth, all of Plaintiffs' claims against the Countrywide Defendants are time-barred. Section 598D claims have a two-year statute of limitations. *Freeto v. Litton Loan Serv., L.P.*, 2010 WL 2730596, at *2 (D. Nev. 2010) (relying on N.R.S. §11.190(4)(b)); *Patterson v. Grimm*, No. 2:10-CV-1292 JCM (RJJ), 2010 WL 4395419, at *3 (D. Nev. Nov. 1, 2010); *Anderson v. Deutsche Bank Nat'l Trust Co.*, No. 2:10-CV-1443 JCM (PAL), 2010 WL 4386958, at *2 (D. Nev. Oct. 29, 2010). The statute of limitations began to run on the execution of the loans. *See id.* (cases finding that statute of limitations begins to run upon execution of loan).

Here, Plaintiffs filed their original Complaint on June 2, 2011. Yet, every Plaintiff's loan was executed more than two years ago. (SAC ¶¶ 39-41 (Anglada's loan was executed in 2005; Guzman's loan was executed in 2005; Eley's property number 1's loan was executed in 2007; Eley's property number 2's loan was executed in 2006; Hill's loan was executed in 2005)). In addition, Plaintiffs also fail to allege any facts to support a request to toll the limitations period, so they cannot rely on any such argument to extend the statute of limitations. *Breliant v. Preferred Equities Corp.*, 109 Nev. 842, 847, 858 P.2d 1258, 1261 (1993) (holding "[a]s a general rule, the court may not consider matters outside the pleading being attacked").[2] Count 1 is time-barred and should be dismissed.[3]

**D.     Plaintiffs' Conspiracy and Fraud Claims Fail (Counts 2, 6, 9, and 12)**

Civil conspiracy is a way to hold other parties liable for an underlying tort, not a stand-alone claim. *Paul Steelman Ltd. v. HKS, Inc.*, 2007 WL 295610, at *3 (D. Nev. 2007) ("Civil conspiracy is not an independent cause of action-it must arise from some underlying wrong."). Here, the conspiracy claims (Counts 2 and 12) are based in fraud. (SAC ¶¶ 43; 92.)

Plaintiffs make the conclusory allegation that Defendants committed fraud by approving them for their loans. (SAC ¶ 43) (Count 2). Similarly, in Plaintiffs' fraud through omission claims, Plaintiffs state the Defendants "committed fraud by failing to disclose to Plaintiffs the

---

[2]     *See also Schneider v. Calif. Dept. of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (stating that "new facts" are irrelevant when considering motion to dismiss for failure to state a claim and that "a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss") (emphasis in original).

[3]     Even if the Court believes a longer statute of limitations applies, the longest applicable would be a three year statute of limitations under N.R.S. §11.190(3)(a), which would likewise bar Plaintiffs' claim as it has been three years since the origination of each of the loans.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

556135.1

predatory, unethical and unsound lending and foreclosure practices…"  (SAC ¶ 81) (Count 6).

Also, Plaintiffs' fraud in inducement claim argues that Defendants "failed to disclose the material

terms of the loan…[by] failing to explain the fact that Plaintiffs and others similarly situated were

not qualified to enter the loans…"  (SAC ¶ 104) (Count 12).

### 1.  Plaintiffs' Claim Fails Rule 8's Plausibility Requirement

The Ninth Circuit recently held that *Twombly*'s "plausibility" requirement applies to fraud

claims. *Cafasso, United States ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th

Cir. 2011) (holding "[b]ecause Rule 8(a) requires the pleading of a plausible claim…we hold that

claims of fraud or mistake—including FCA claims—must, in addition to pleading with

particularity, also plead plausible allegations…That is, the pleading must state 'enough fact[s] to

raise a reasonable expectation that discovery will reveal evidence of [the misconduct alleged]'")

(citing *Twombly*, 550 U.S. at 556).  Thus, not only do Plaintiffs have to allege fraud with

particularity, those facts must give rise to a plausible claim to relief.  *Id.*

Here, Plaintiffs' fraud claims are not plausible as they are based on the faulty premise that

there exists a tort against lenders for failing to put Plaintiffs into financially-suitable loans.  This

"suitability" claim has been alleged and dismissed countless times because there is no fiduciary

duty on the part of the lender to protect the borrower's interests.  *See Velasquez*, 2009 WL

2338852, *5 (D. Nev. July 24, 2009) (A lender is "under no duty to ensure the success of the

borrower's investment"); *Gonzalez v. First Franklin Loan Servs.*, 2010 WL 144862, *13 (E.D.

Cal. January 11, 2010) (lender "owes no duty of care to the borrower in approving a loan" and can

even place borrowers in a loan where there is a foreseeable risk that they will not be able to pay);

*Spencer v. DHI Mortgage, Inc.*, 642 F. Supp. 2d 1153, 1161 (E.D. Cal. 2009) ("[N]o . . . duty

exists for a lender to determine the borrower's ability to repay the loan"); *Renteria v. United

States*, 452 F. Supp. 2d 910, 922-23 (D. Ariz. 2006) ("No such duty exists" for a lender "to

determine the borrower's ability to repay the loan… The lender's efforts to determine the

creditworthiness and ability to repay by a borrower are for the lender's protection, not the

borrower's… [The borrowers] had to rely on their own judgment and risk assessment to determine

whether or not to accept the loan."); *Larson*, 680 F. Supp. 2d at 1234 ("courts have repeatedly held

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

556135.1

that a lender owes no fiduciary duties to a borrower absent exceptional circumstances, such as when a special relationship exists between the two parties"); *Yerington Ford, Inc. v. General Motors Acceptance Corp.*, 359 F. Supp. 2d 1075, 1090 (D. Nev. 2004) ("the Court is satisfied that the Nevada Supreme Court would hold that an arms-length lender-borrower relationship is not fiduciary in nature, absent exceptional circumstances"). In the present case, Plaintiffs do not allege one fact demonstrating that any of their relationships with the lenders were anything but that between a traditional lender and borrower. In short, "[a] cause of action for fraud does not lie for bad financial advice or 'suitability.'" *Weingartner v. Chase Home Fin., LLC*, 702 F. Supp. 2d 1276, 1290 (D. Nev. 2010). Plaintiffs' fraud claims are not plausible and therefore, should be dismissed.

### 2.  Plaintiffs' Fraud Claims Lack Specificity

Plaintiffs' fraud claims lack specificity. Federal Rule of Civil Procedure 9(b) provides that all "circumstances constituting the fraud . . . shall be stated with particularity." Thus, a plaintiff is required to plead facts as to *time*, *place*, and *substance of the fraud*, specifically detail the defendant's allegedly *wrongful acts*, including *when* they occurred and *who* engaged in the misconduct. *See, e.g., Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997); *see also Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008) (specificity requirement applies to conspiracy claims). Furthermore, in civil conspiracy actions, "courts insist upon a higher level of specificity than is usually demanded of other pleadings." *Alfus v. Pyramid Tech. Corp.*, 745 F. Supp. 1511, 1521 (N.D. Cal. 1990). Like a claim for fraud, a conspiracy claim must allege facts such as a "specific time, place, or person involved in the alleged conspiracies to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin." *Kendall, Inc.*, 518 F.3d at 1047.

Plaintiffs' allegations fall far short of the particularity required by Rule 9(b). Plaintiffs do not allege one specific fact in the entire SAC. Plaintiffs "plead[] only ultimate facts, such as conspiracy, and legal conclusions. They fail[] to plead the necessary evidentiary facts to support those conclusions." *Kendall*, 518 F.3d at 1047-48 (affirming dismissal of conspiracy claim). Moreover, Plaintiffs lump all Defendants together, which is wholly improper under Rule 9. *See*

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

556135.1

1   *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (noting that "Rule 9(b) does not allow a

2   complaint to merely lump multiple defendants together").  Even more improper, Plaintiffs even

3   lump themselves together into a group without any explanation as to how any specific

4   misrepresentation applied to them all.

5         **E.**    **Wrongful Foreclosure Claim Fails (Count 5)**

6         **1.**  **Plaintiffs Do Not Allege They Are Not In Default**

7       "An action for the tort of wrongful foreclosure will lie if the trustor or mortgagor can

8   establish that at the time the power of sale was exercised or the foreclosure occurred, no breach of

9   condition or failure of performance existed on the mortgagor's or trustor's part which would have

10  authorized the foreclosure or exercise of the power of sale." *Joyner v. Bank of Am. Home Loans*,

11  2010 WL 2953969, at *4 (D. Nev. 2010) (quoting *Collins v. Un. Fed. Sav. & Loan Ass'n*, 662

12  P.2d 610 (Nev. 1983)).  "Therefore, the material issue of fact in a wrongful foreclosure claim is

13  whether the trustor was in default when the power of sale was exercised." *Id.*

14      Here, none of the Plaintiffs alleges this central and vital fact.  (*See, generally*, SAC.)  The

15  wrongful foreclosure claim therefore fails.

16        **2.**  **A Wrongful Foreclosure Claim Requires Tender**

17      In addition, Plaintiffs cannot claim wrongful foreclosure given their failure to adhere to the

18  tender rule.  Any claim to challenge irregularities in the foreclosure proceedings requires tender.

19  *Kraemer v. Kraemer*, 79 Nev. 287, 382 P.2d 394 (1963) (recovery of property is denied where

20  Plaintiff was financially unable to redeem property despite evidence of fraud and procedural

21  irregularities in foreclosure); *Ferguson v. Avelo Mortg., LLC*, 126 Cal. Rptr. 3d 586, 195 Cal.

22  App. 4th 1618, 21 (2011) (upholding dismissal of wrongful foreclosure claim for lack of tender

23  and rejecting claims that MERS' assignments invalidate the sale stating plaintiffs "offer no

24  authority, state or federal, to support the legal loophole they claim for defaulting borrowers and

25  their successors").

26      In the present case, Plaintiffs have not tendered, offered to tender, or alleged an ability to

27  tender.  The Court must dismiss Plaintiffs' wrongful foreclosure claim.

28  . . .

### 3. The Foreclosure "Sequence" Was Correct

Even if Plaintiffs are able to make a wrongful foreclosure claim despite being in default and not alleging tender, there was nothing wrong with the foreclosure here.

In the case of Plaintiff Anglada, the sequence was correct. On September 3, 2009, MERS assigned beneficial interest to Bank of New York. (Exhibit C.) Bank of New York substituted in ReconTrust as the trustee. (Exhibit D.) On September 3, 2009, ReconTrust initiated default. (Exhibit B.) Even though the substitution of trustee may have been dated after ReconTrust initiated default, Bank of New York's substitution of trustee acts as ratification of ReconTrust's initiation of foreclosure. *Logan v. World Sav. Bank, FSB*, No. 3:11–CV–00063–RCJ–RAM, 2011 WL 1627001, at *2 (D. Nev. Apr. 26, 2011) (holding "[a]lthough this Substitution of Trustee was filed after the recordation of the NOD, it does represent a clear an unambiguous representation that either NDSC was acting on behalf of a proper entity, either the trustee or beneficiary, or a subsequent ratification of the actions taken by NDSC by the beneficiary, who executed the Substitution of Trustee, with regards to the recording of the NOD"); *Barrett Bates v. Mortgage Electronic Registration Systems, Inc.*, 3:10-cv-00407-RCJ-VPC, Document #57 (D. Nev. April 25, 2011) (subsequently filed substitution of trustee acts as "practically insurmountable evidence of ratification" of previously filed Notice of Default).

In the case of Plaintiff Hill, ReconTrust initiated default. (Exhibit H.) ReconTrust was substituted in as trustee by BAC. (Exhibit J.) BAC was given the authority to substitute by MERS. (Exhibit J.) Although ReconTrust technically initiated default before BAC substituted it in as trustee, BAC's substitution of trustee (Exhibit J) acts as undisputable proof of ratification. *Logan*, 2011 WL 1627001, at *2 (holding "[a]lthough this Substitution of Trustee was filed after the recordation of the NOD, it does represent a clear an unambiguous representation that either NDSC was acting on behalf of a proper entity, either the trustee or beneficiary, or a subsequent ratification of the actions taken by NDSC by the beneficiary, who executed the Substitution of Trustee, with regards to the recording of the NOD"); *Bates*, 3:10-cv-00407-RCJ-VPC, Document #57 (subsequently filed substitution of trustee acts as "practically insurmountable evidence of ratification" of previously filed Notice of Default).

1    In the case of Plaintiff Guzman, on April 21, 2011, MERS assigned beneficial interest to

2    BAC. (Exhibit M.)  On April 21, 2011, BAC substituted ReconTrust in as trustee. (Exhibit O.)

3    One day later, on April 22, 2011, ReconTrust initiated default. (Exhibit M.)  This sequence is

4    clearly proper. *See Villa v. Silver State Fin. Servs., Inc.,* No. 2:10-cv-02024-LDG-LRL, 2011 WL

5    1979868, at *7 (D. Nev. May 20, 2011) (upholding foreclosure based on identical foreclosure

6    procedures); *Smith v. Community Lending, Inc.*, 2011 WL 1127046 (D. Nev., March 29, 2011)

7    (same).

8    In the case of Plaintiff Eley, her Reno Property foreclosure was proper.  ReconTrust was

9    the original trustee on the Deed of Trust. (Exhibit P.)  ReconTrust had authority to initiated

10   foreclosure. N.R.S. § 107.080 ("a power of sale is hereby conferred upon the trustee…")

11   In the case of Plaintiff Eley's Idaho property foreclosure, Defendants respectfully ask the

12   Court to dismiss for lack of jurisdiction under forum non convienens, as discussed above.

13

14   **F.     Plaintiffs' Breach of Contractual Covenant of Good Faith Claim Fails (Count
         7)**

15   Plaintiffs claim Defendants breached the contractual covenant of good faith by "engaging,

16   and continuing to engage, in predatory, unethical and unsound lending practices.  Defendants

17   failed to disclose material facts…" (SAC ¶ 86.)  Plaintiffs never list what "material facts" they are

18   referring to.

19   A contractual duty of good faith and fair dealing arises only between parties to a contract.

20   *Haley v. Elegen Home Lending, LP*, 2010 WL 1006664, at *2 (D. Nev. 2010).  Here, Plaintiffs do

21   not allege to which contract they are referring.  Defendants should not have to guess.

22   Furthermore, Plaintiffs never state specify what Defendants did that is "predatory, unethical and

23   unsound…"  This claim fails Rule 8 to put Defendants on notice of the alleged claim.  *Twombly*,

24   550 U.S. at 555 (Rule 8 "requires more than labels and conclusions, and a formulaic recitation of a

25   cause of action's elements will not do").

26   Assuming the contracts are the Notes and Deeds that each Plaintiff signed, then their claim

27   is even more tenuous.  Plaintiffs' allegations about "lending practices" occurs before a contract is

28   formed.  Without a contract, no claim for breach of the covenant of good faith can exist.

1   *Velasquez v. HSBC Mortgage Services,* 2009 WL 2338852, at *9 (D. Nev. July 24, 2009) (no

2   breach of the duty of good faith where no contract formed).

3        Even if Plaintiffs were able to point to an existing contract and conduct that occurring after

4   contract formation that might constitute breach of good faith, Plaintiffs' claim would still fail.

5   Plaintiffs breached the explicit terms of the contract by not paying their mortgages.  It would turn

6   contract law upside down to allow a breaching party to claim good faith damages when the non-

7   breaching party seeks relief for the breach.  In fact, courts hold that the duty of good faith and fair

8   dealing "is limited to assuring compliance with the express terms of the contract, **and cannot be**

9   **extended to create obligations not contemplated by the contract.**"  *McKnight v. Torres,* 563

10  F.3d, 890, 893 (9th Cir. 2009) (quoting *Spinks v. Equity Residential Briorwood Apartments,* 171

11  Cal. App. 4th 1004 (2009)) (emphasis added).  This Court should dismiss Count 7 for all of these

12  reasons.

13        **G.     Tortious Breach of Good Faith Claim Fails As A  Matter of Law (Count 8)**

14        Plaintiffs' eighth claim merely recites the elements of a good faith claim without any

15  indication as to how it applies to the factual allegations here.  (SAC ¶¶88-90.)  Under Federal Rule

16  of Civil Procedure 8, "formulaic recitation of a cause of action's elements will not do."  *Twombly,*

17  550 U.S. at 555.  This alone warrants dismissal.

18        Even if Plaintiffs' bare-bones pleading satisfied *Twombly,* there is no tortious breach of

19  good faith here because Plaintiffs have not alleged that the Countrywide Defendants owe Plaintiffs

20  a fiduciary duty.  *Insurance Co. of the West v. Gibson Tile Co., Inc.,* 122 Nev. 455, 461-462, 134

21  P.3d 698, 702 (2006) (requiring special relationship in tortious good faith claims).  Nor could they.

22  Lenders do not owe borrowers a fiduciary duty absent special circumstances, none of which is

23  alleged here.  *Goodwin v. Executive Tr. Servs., LLC,* 680 F. Supp. 2d 1244, 1256–57 (D. Nev.

24  2010); *Larson v. Homecomings Financial, LLC,* 680 F. Supp. 2d 1230, 1234 (D. Nev. 2009)

25  ("courts have repeatedly held that a lender owes no fiduciary duties to a borrower absent

26  exceptional circumstances, such as when a special relationship exists between the two parties");

27  *Yerington Ford, Inc. v. General Motors Acceptance Corp.,* 359 F. Supp. 2d 1075, 1090 (D. Nev.

28  2004) ("the Court is satisfied that the Nevada Supreme Court would hold that an arms-length

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

556135.1

1   lender-borrower relationship *is not fiduciary in nature*, absent exceptional circumstances")

2   (emphasis added).

3       **H.**    **Plaintiffs' Unjust Enrichment Claim Fails (Count 10)**

4       Under Nevada law, "[a]n action based on a theory of unjust enrichment is not available

5   when there is an express, written contract, because no agreement can be implied when there is an

6   express agreement." *Leasepartners Corp. v. Robert L. Brooks Trust*, 942 P.2d 182, 187 (Nev.

7   1997) (per curiam).

8       Here, Plaintiffs admit they have executed contracts.  (SAC ¶ 97) ("Defendants induced

9   Plaintiffs into executing the mortgage loan documents…").  The existence of such contracts bars

10  unjust enrichment claims. *See Hearne v. Countrywide Home Loans, Inc.*, 2010 WL 1815424, at

11  *5 (D. Nev. Apr. 30, 2010) ("Plaintiffs' mortgages are express and written contracts; Plaintiffs'

12  fifth claim [unjust enrichment] thus fails and will be dismissed.")  Accordingly, Count 10 should

13  be dismissed.

14      **I.**    **Plaintiffs' Racketeering Claims Fails (Count 11)**

15      "RICO claims arising from garden-variety foreclosure actions are frivolous stalling actions

16  that abuse the court system." *Coward v. First Magnus Fin. Corp.*, 2009 WL 3367398, at *5 (D.

17  Nev. Oct. 14, 2009) (citing appellate courts' affirmation of sanctions against attorneys who bring

18  RICO actions in similar foreclosure actions in *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50

19  (2d Cir. 2004) and *Tropf v. Fidelity Nat'l Title Co.*, 289 F.3d 929, 939-41 (6th Cir. 2002)).

20  Plaintiffs' RICO claim is no different.  (SAC ¶¶ 100-01.)

21      Racketeering activity is defined in N.R.S. 207.390 as "engaging in at least two crimes

22  related to racketeering that have the same or similar pattern, intents, results, accomplices, victims

23  or methods of commission, or are otherwise interrelated by distinguishing characteristics and are

24  not isolated incidents. . . [.]"   The crimes enumerated under Nevada's RICO statute are set forth in

25  N.R.S. § 207.360.

26      Here, Plaintiffs fail to allege any crime to support their RICO claim, let alone two.

27  Plaintiffs claim that Defendants participated in "predatory" and "abusive" lending practices (SAC

28

¶ 101), neither of which is covered as a "crime" in accordance with N.R.S. § 207.360.  The RICO claim should be dismissed for this reason alone.

In addition, the Ninth Circuit requires a RICO claim to be plead with particularity as required under Rule 9(b).  *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989).  As noted above for fraud, Plaintiffs' allegations do not meet this particularity standard.  Plaintiff does not allege the who, what, where and when of any wrongful conduct.  *Cooper*, 137 F.3d at 627.  Furthermore, Plaintiffs' conclusory pleadings lump Defendants (and Plaintiffs) together, which also fails under Rule 9.  *Swartz*, 476 F.3d at 764.  Plaintiffs' RICO claim is not plead with particularity and must be dismissed.

**J.     Injunctive and Declaratory Relief Actions Fail (Counts 3 and 4)**

As this Court has previously recognized, both injunctive and declaratory relief "claims" are actually remedies, and not causes of action that state a legal claim.  *In re Wal-Mart Wage & Hour Employment Practices Litig.*, 490 F.Supp.2d 1091, 1130 (D. Nev. 2007).  For that reason alone, this Court should dismiss both "claims."  *Josephson v. EMC Mortgage Corp.*, No. 2:10-CV-336 JCM (PAL), 2010 WL 4810715, at *3 (D. Nev. Nov. 19, 2010) ("[I]t is well established that injunctive relief is a remedy, and not an independent cause of action . . . Declaratory relief is a form of relief which is not intended to furnish the plaintiffs with a second cause of action for the determination of identical issues.") (internal citations and modifications omitted).

Plaintiffs' other claims fail for the reasons stated above, so do the underlying remedies for injunctive and declaratory relief.  *See Duncan*, No. 3:09-cv-00632-RCJ-VPC, slip op. at 9 ("Because the underlying causes of action will be dismissed, these causes of action will also be dismissed"); *Sieben*, No. 3:09-cv-00642-RCJ-VPC, slip op. at 9 (same); *Simon v. Bank of Am., N.A.*, No. 10-cv-00300-GMN-LRL, 2010 WL 2609436, at *14 (D. Nev. June 23, 2010) (dismissing claims for injunctive and declaratory relief because "[a]s Plaintiff has failed to make out any actionable substantive claims, his requests for relief must be dismissed as well").

. . .

. . .

. . .

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

556135.1

1  **IV.    CONCLUSION**

2          Based on the foregoing arguments, Defendants request the Court dismiss the entire Second

3  Amended Complaint.  Additionally, Defendants request the Court issue an Order cancelling the *lis*

4  *pendens* currently filed on all Properties in Nevada.

5          DATED this 29th day of July, 2011.

6                                                  LEWIS AND ROCA LLP

7

8                                                  By _____

9                                                       J. CHRISTOPHER JORGENSEN, ESQ.
                                                         MENG ZHONG, ESQ.
10                                                       3993 Howard Hughes Pkwy., Ste. 600
                                                         Las Vegas, NV  89169
11                                                       Attorneys for Defendants

12

13

14

15                          **CERTIFICATE OF SERVICE**

16          The undersigned certifies that a copy of the foregoing document was served on counsel,

17  listed below, on the 29 day of July 2011, via the court's electronic service system:

18

19  Paul Freitag, Esq.
    Karlon J. Kidder, Esq.
20  The Law Offices of Paul Freitag
    885 Tyler Way
21  Sparks, NV  89431
    Attorneys for Plaintiffs

22

23  _____
    an employee of Lewis and Roca LLP

24

25

26

27

28

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89169

556135.1