UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| TAMARA ANGLADA et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | 3:11-cv-00524-RCJ-WGC |
| vs. | ) | |
| | ) | |
| BANK OF AMERICA CORP. et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |
| | ) | |

**I.   INTRODUCTION AND PROCEDURAL HISTORY**

This is a standard foreclosure case involving five properties owned by four Plaintiffs. The Second Amended Complaint ("SAC") filed in state court lists twelve causes of action: (1) Unfair Lending Practices Under Nevada Revised Statutes ("NRS") section 598D.100; (2), (9) Civil Conspiracy; (3) Injunctive Relief; (4) Declaratory Relief; (5) Wrongful Foreclosure; (6), (12) Fraud; (7)–(8) Breach of the Covenant of Good Faith and Fair Dealing; (10) Unjust Enrichment; and (11) Racketeering Under NRS section 207.470. The case is not part of Case No. 2:09-md-02119-JAT in the District of Arizona but appears eligible for transfer. The state court issued a temporary restraining order ("TRO") preventing Defendants from selling Plaintiff Brent Hill's property, later extended the TRO until August 6, 2011, and set a preliminary injunction hearing for August 5, 2011. Defendants removed in the meantime and have now moved to dismiss. Plaintiffs have moved to remand. For the reasons given herein, the Court

severs the Anglada case from the others under Rule 21, remands that case, and dismisses the claims of the remaining Plaintiffs, except for Hill's.

## II.   ANGLADA

Louis Marvin and Tamara Lane Anglada gave lender Custom Home Loans, Inc. ("Custom") a $317,700 promissory note to purchase real property at 1640 Cumulus Ct., Sparks, NV 89436 (the "Anglada Property"). (*See* Anglada Deed of Trust ("DOT") 1–3, Aug. 30, 2005, ECF No. 5, at 6).  The Anglada property was a second home. (*See* Second Home Rider, Aug. 30, 2005, ECF No. 5, at 28).  Western Title Co., Inc. ("Western Title") was the trustee, and Mortgage Electronic Registration Systems, Inc. ("MERS") was the lenders "nominee." (*See* Anglada DOT 1).  MERS assigned the note and DOT to The Bank of New York Mellon, f.k.a. The Bank of New York ("Mellon") as trustee for a mortgage-backed security. (*See* Assignment, Sept. 3, 2009, ECF No. 5, at 34).  Mellon substituted Recontrust CO., N.A. as trustee. (*See* Substitution, Sept. 11, 2009, ECF No. 5, at 36).  Recontrust filed the notice of default ("NOD") based on a default of unspecified amount as of February 1, 2009. (*See* NOD, Sept. 3, 2009, ECF No. 5, at 32).  As discussed below, the Court will remand Anglada's claims and will not rule on the merits.

## III.   ELEY (Reno)

Richard M. Eley gave lender Countrywide Home Loans, Inc. ("Countrywide") a $309,600 promissory note to purchase real property at 8711 White Fir St., Reno, NV 89523 (the "Reno Eley Property"). (*See* Eley DOT (Reno) 1–4, Jan. 25, 2007, ECF No. 5-3, at 4).  This was likely a second home, as Eley had purchased his Boise, Idaho home a year earlier. *See infra*. Recontrust was the trustee, and MERS was the lenders "nominee." (*Id.* 2).  Recontrust filed the NOD based on a default of unspecified amount as of May 1, 2010. (*See* NOD, Dec. 22, 2010, ECF No. 5-3, at 27).  The foreclosure was therefore statutorily proper, *see* Nev. Rev. Stat. § 107.080(2)(c), and Eley does not appear to deny default.  The remaining claims fail for reasons

given in substantively similar cases.

**IV.    ELEY (Boise)**

Richard Eley gave lender America's Wholesale Lender ("AWL") a $172,000 promissory note to purchase property at 11643 W. Tahiti St., Boise, ID 83713 (the "Boise Eley Property"). (*See* Eley DOT (Boise) 1–2, Jan. 26, 2006, ECF No. 5-3, at 29). Fidelity National Title Insurance Co. ("Fidelity") was the trustee, and MERS was the lenders "nominee." (*Id.* 1). MERS substituted Recontrust as trustee. *See* Ada County Recorder Instrument No. 109022915, Feb. 27, 2009, *available at* http://www.adaweb.net/recsearch/Details.aspx?instrument=109022915. MERS filed the notice of default ("NOD"). *See* Ada County Recorder Instrument No. 109022916, Feb. 27, 2009, *available at* http://www.adaweb.net/recsearch/Details.aspx?instrument=109022916. Both of these actions were within MERS's agency for the lender.

Assuming no other jurisdictional defects, the Court has *in personam* jurisdiction to order a party to convey a deed to the Boise Eley Property, although it may not directly affect or determine title to the Boise Eley Property. *See Perry v. O'Donnell*, 749 F.2d 1346, 1352 (9th Cir. 1984) (citing *Fall v. Eastin*, 215 U.S. 1, 11 (1909)). The SAC contains no claim for quiet title nor any request for a general declaration affecting the title. Therefore, the Court need not decline jurisdiction over any of the claims.

The foreclosure appears to have been clean under Idaho law.[1] The foreclosure of deeds of trust is governed by Chapter 15 of Title 45 of the Idaho Statutes. Generally, the trustee may foreclose after: (1) the trustee or beneficiary has recorded a notice of default; (2) the mortgagor is in default; and (3) the deed of trust and any assignments or substitutions of trustee have also been recorded. *See* Idaho Code § 45-1505(1)–(3). Prior to recordation of the NOD, and at least

---

[1] Certain amendments to the relevant statutes, including loan modification request procedures, took effect on September 1, 2011 after the present NOD was filed.

1  120 days prior to a trustee's sale, the grantor must receive notice of the trustee's sale by

2  registered or certified mail. *See id.* § 45-1506(2)(a). The notice of sale must contain certain

3  information, and at least three good faith attempts must be made to serve the notice of sale. *See*

4  *id.* § 45-1506(4)–(5). Because the DOT gives MERS broad agency to administer the deed of

5  trust on behalf of the beneficiary, it is presumably proper for MERS, the trustee, or the

6  beneficiary to foreclose in Idaho. Furthermore, the Idaho Supreme Court has assumed without

7  deciding that MERS is in fact a beneficiary under Idaho law merely by being named as one on a

8  deed of trust. *See Fed. Home Loan Mortg. Corp. v. Appel*, 137 P.3d 429, 430–31 (Idaho 2006)

9  (noting that MERS made a credit bid at the foreclosure sale even though it was merely named as

10 the beneficiary on the deed of trust as was not the lender or subsequent assignee). Eley does not

11 identify any particular defects in foreclosure and in fact nowhere cites to the Idaho Statutes. The

12 remaining claims fail for reasons given in substantively similar cases.

13 **V.   GUZMAN**

14      Abel Guzman gave lender Soma Financial ("Soma") a $302,212 promissory note to

15 purchase property at 2160 Lenticular Dr., Sparks, NV 89436 (the "Guzman Property"). (*See*

16 Guzman DOT 1–2, Aug. 2, 2005, ECF No. 5-2, at 2). The trustee was Western Title, and MERS

17 was the lenders "nominee." (*Id.* 1). MERS assigned the note and DOT to BAC Home Loans

18 Servicing, LP, f.k.a. Countrywide Home Loans Servicing LP ("BAC"). (*See* Assignment, Apr.

19 21, 2011, ECF No. 5-2, at 35). BAC substituted Recontrust as trustee. (*See* Substitution, Apr.

20 21, 2011, ECF No. 5-2, at 37). Recontrust filed the NOD based on a default of unspecified

21 amount as of January 1, 2011. (*See* NOD, Apr. 21, 2011, ECF No. 5-2, at 32). The foreclosure

22 was therefore statutorily proper. *See* Nev. Rev. Stat. § 107.080(2)(c).

23      MERS transferred the note and DOT. The Court had in the past challenged such

24 transfers as potentially improper, because MERS is typically not in fact a beneficiary and the

25 scope of MERS' agency due to its designation as a "nominee" on a deed of trust is not clear

enough without more to indicate that a lender intends to give MERS the ability to sell the beneficial interest on its behalf.  However, several defendants have since brought to the Court's attention a common clause in MERS deeds of trust—also present in the Guzman DOT—that indicates an intention to give MERS the broadest possible agency on behalf of the lender, including transfer of the beneficial interest. *See, e.g.*, *Smith*, 773 F. Supp. 2d at 942–43.  The MERS assignment of the note and DOT from Soma to BAC in this case was proper, because the Anglada DOT contains the relevant agency language. *See id.*; Guzman DOT 3.  The foreclosure was statutorily proper, and Guzman does not appear to deny default.  The remaining claims fail for reasons given in substantively similar cases.

**VI.    HILL**

Brett J. Hill gave lender Home Mortgage Direct Lenders ("HMDL") a $300,000 promissory note to purchase property at 3810 Belvedere Dr., Reno, NV 89503 (the "Hill Property"). (*See* Hill DOT 1–3, Oct. 11, 2005, ECF No. 5-1, at 2).  Ticor Title of Nevada, Inc. ("Ticor Title") was the trustee, and MERS was the lenders "nominee." (*Id.* 1).  MERS assigned the note and DOT to BAC. (*See* Assignment, Feb. 7, 2011, ECF No. 5-1, at 31).  BAC substituted Recontrust as trustee. (*See* Substitution, Feb. 7, 2011, ECF No. 5-1, at 33).  Recontrust filed the NOD based on a default of unspecified amount as of August 1, 2010. (*See* NOD, Jan. 31, 2011, ECF No. 5-1, at 28).  The foreclosure was therefore statutorily proper. *See* Nev. Rev. Stat. § 107.080(2)(c).

First, MERS transferred the note and DOT.  The Court had in the past challenged such transfers as potentially improper, because MERS is typically not in fact a beneficiary and the scope of MERS' agency due to its designation as a "nominee" on a deed of trust is not clear enough without more to indicate that a lender intends to give MERS the ability to sell the beneficial interest on its behalf.  However, several defendants have since brought to the Court's attention a common clause in MERS deeds of trust—also present in the Hill DOT—that

1 indicates an intention to give MERS the broadest possible agency on behalf of the lender,

2 including transfer of the beneficial interest. *See, e.g.*, *Smith*, 773 F. Supp. 2d at 942–43.  The

3 MERS assignment of the note and DOT from HMDL to BAC in this case was proper, because

4 the Hill DOT contains the relevant agency language. *See id.*; Hill DOT 3.

5       Second, Recontrust filed the NOD a week before BAC appointed Recontrust as the new

6 trustee.  Without more, this would indicate a statutory defect in foreclosure, because only the

7 beneficiary, trustee, or an agent of one of these may file the NOD under section 107.080(2)(c).

8 The Court has ruled in that "[a] later-executed substitution of trustee making the notice of default

9 filer the new trustee before proceeding to sale is practically insurmountable evidence of

10 ratification . . . ." *Nevada ex rel. Bates v. MERS*, No. 3:10–cv–00407–RCJ–VPC, 2011 WL

11 1582945, at *5 (D. Nev. Apr. 25, 2011) (citing Restatement (Third) of Agency § 4.03 & cmt. b).

12 Such is the case here. (*See* NOD, Jan. 31, 2011, ECF No. 5-1, at 28; *See* Substitution, Feb. 7,

13 2011, ECF No. 5-1, at 33).  However, the Court has since indicated that it intends not to dismiss

14 in such cases but will await motions for summary judgment.  The remaining claims fail for

15 reasons given in substantively similar cases.

16 **VII.   Remand**

17       Plaintiffs have moved to remand the case to state Court.  They note that the Angladas'

18 lender, Custom, is a Nevada corporation.  The Nevada Secretary of State website indicates that

19 Custom was a Nevada corporation whose charter has been revoked, but the date of revocation is

20 not apparent.  The website notes only that a list of officers was due in February 2008, but there is

21 no indication of how long thereafter Custom was permitted to operate before revocation.

22 Defendants argue that its license was revoked in 2008, but they provide no evidence of this, only

23 a printout of the web page described *supra*.

24       Dissolved corporations can sue and be sued in their own name Nevada for two years after

25 dissolution. *See McManus v. McManus Fin. Consultants, Inc.*, No. 3:10-CV-00281-RCJ-VPC,

2010 WL 4290866, at *4–5, (D. Nev. Oct. 20, 2010) (Jones, J.). For the purposes of diversity, because it is not clear when the state revoked Custom's charter, the Court will presume revocation was within two years of the present suit, because the presumption is against federal jurisdiction. The SAC lists state law claims against Custom, a non-diverse Defendant, and no federal claims are pled. The Court will therefore remand.

However, the Court will only remand the Anglada case, after severing it pursuant to Rule 21. *See Greene v. Wyeth*, 344 F. Supp. 2d 674, 683 (D. Nev. 2004) (Hicks, J.) (noting that procedural misjoinder occurs where plaintiffs who are completely diverse from their own defendants file their cases jointly with a plaintiff who is not completely diverse with his own defendants in a procedural gambit to defeat diversity, even though the separate cases do not "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences" under Rule 20). As Defendants note, only the Angladas purport to have any claim against lender Custom. The other cases are unrelated to the Anglada case, and there is no diversity in those cases. Severance under Rule 21 is therefore proper before remand of the Anglada case.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Remand (ECF No. 12) is GRANTED in part. The Anglada's claims are SEVERED and REMANDED. The remaining Plaintiffs' claims are not remanded.

IT IS FURTHER ORDERED that the Motion to Dismiss (ECF No. 4) is GRANTED as to the remaining Plaintiffs' claims, except as to Hill's claim for statutorily defective foreclosure.

IT IS FURTHER ORDERED that Defendants will not sell the Hill Property for one-hundred (100) days. During this period, Hill will make full, regular monthly payments under the note every thirty (30) days, **with the first payment being due ten (10) days after the date of this order**. The amount of each payment will be according to the monthly payment as of the date of the NOD. **Payments will be made either to the current servicer or deposited with the**

1  **Clerk**.  Failure to make interim payments during the injunction period will result in dissolution
2  of the injunction.  Hill need not pay late fees or cure the entire amount of past default at this
3  time.
4      IT IS FURTHER ORDERED that during the injunction period the parties will engage in
5  the state Foreclosure Mediation Program ("FMP"), if available.  If not available, Defendants will
6  conduct a private mediation with Hill in good faith.  Although such private mediation need not
7  comport with all of the procedural and documentary requirements of the FMP, the beneficiary
8  must send a representative to the mediation with actual authority to modify the note, and Hill
9  must provide debt, asset, and income data to Defendants in advance of the mediation.
10     IT IS SO ORDERED.
11 Dated this 24th day of October, 2011.

                                                                _____
                                                                ROBERT C. JONES
                                                              United States District Judge